FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

00 APR 26

U.S. DISTRICT COURT
N.D. OF ALABAMA

BARBARA J. GARDNER,                     ]
                                        ]
    Plaintiff(s),                   ]
                                        ]
    vs.                             ]     CV 99-N-1482-S
                                        ]
CITY OF BIRMINGHAM, et al.,             ]
                                        ]     **ENTERED**
    Defendant(s).                   ]
                                              APR 2 6 2000

## Memorandum of Opinion

### I.  Introduction.

The pro se plaintiff, Barbara J. Gardner, brings this action pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, *et seq.*  The court presently has for consideration the City of Birmingham's motion for summary judgment (Doc. No. 29).[1]  The motion has been briefed by the parties and is ripe for decision.  Upon due consideration, the motion for summary judgment will be granted in all respects.

### II.  Statement of Facts.[2]

The plaintiff began her employment with the defendant in February of 1992 in the records division where she remained until November of 1996, when she was transferred

---

[1] By order entered October 20, 1999 (Doc. No. 14), the Birmingham Police Department and the Personnel Board of Jefferson County were dismissed from this action.

[2] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



to data entry allegedly because of her "inability to work with other employees without conflicts." Doc. No. 31 at exhibit 2.[3] Around the same time as her assignment change, the plaintiff received a three-day disciplinary suspension for "rule violations" which she did not appeal. Seniority in the data entry unit is measured by the date an employee enters the unit. The plaintiff concedes that she does not believe that unit seniority is based on race, sex or gender.

When the plaintiff was first transferred to data entry, her hours were from 6:00 a.m. to 2:00 p.m. and she worked with seven other women on this shift. In April of 1998, a shift preference was completed in which Ms. Gardner was not able to retain her original shift times. She filed a grievance complaining that she did not want to be involved in shift work which would subject her to varying hours, although she admits that she had not been promised a permanent shift when she began working for the City. The plaintiff filed a second grievance protesting the use of unit seniority in her department rather than departmental seniority. Despite the plaintiff's contention that her shift assignment in the data entry department was supposed to be permanent, Ms. Gardner eventually began working her assigned shift of 10:00 p.m. to 6:00 a.m. for about a week and then was transferred to the 2:00 p.m. to 10:00 p.m. shift where she remained until May, 1998.[4]  Shift

---

[3] In her response, the plaintiff seems to indicate for the first time that the transfer was the result of her filing a police report against Fred Shufford "for assaulting her in the office." Doc. No. 34. Apparently, on October 3, 1994, the plaintiff completed a "Birmingham Police Incident/Offense Report," in which she stated that Mr. Shufford "used his open hand to slap [me. Mr. Shufford] then stated to, two unidentified witnesses 'That's the way I keep her in line.'" Doc. No. 34 at exhibit 1.

[4] The plaintiff admits that her choice of shift preference was either the 2:00 p.m. to 10:00 p.m. shift or the 10:00 p.m. to 6:00 a.m. shift.

preference was called again in the beginning of July of 1998, while the plaintiff was out on sick leave and was not notified of the shift preference opportunity.[5]

The plaintiff took a leave of absence to have surgery on her finger, and returned to work on August 3, 1998.  In late August of 1998, the plaintiff met with Lieutenant Irby and Donna Smith concerning the alleged destruction and hiding of police reports.  After this meeting, the plaintiff was put on administrative leave without pay.  On September 3, 1998, the plaintiff was served with a "Notice of Determination Hearing," and on September 8, 1998, she was served with the "Birmingham Police Department Decision Upon Determination Hearing of Possible Disciplinary Action," in which Chief Coppage notified the plaintiff of his decision to terminate her employment.  Ms. Gardner appealed the decision to the Jefferson County Personnel Board, which sustained the decision.

On February 2, 1999, the plaintiff filed her charge of discrimination with the EEOC alleging Title VII and ADA violations.  On February 5, 1999, the EEOC issued the plaintiff a right-to-sue letter and the plaintiff filed suit in this court within 90 days.  On May 17, 1999, the plaintiff filed an Application under Section 706(f) of the Civil Rights Act of 1964, in which she alleged a refusal to accommodate her after her return to work after having surgery on her finger.  In the plaintiff's amended complaint, she alleged only a Title VII violation and no ADA violation.

---

[5] Apparently, Chandra McCants, a black female, was notified of the opportunity while out on sick leave.

### III.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of

4

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

5

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

IV. **Discussion.**

A. **Title VII.**

1. **Gender Discrimination.**

The defendant argues in its motion for summary judgment that the plaintiff makes no claim cognizable under Title VII. The Court agrees. The plaintiff alleges in her application that "I was forced to work in a job in which my seniority was reduced or taken away. The job that I was forced to leave was a Monday thru Friday job with weekends and holidays off. The job I was made to go to was a twenty-four hour operations with no weekend off or holidays off." Doc. No. 1. She later states in her application that "my seniority was taken away as it applied to shift, holidays, vacations. The management said that it was do [sic] to <u>Unit Seniority</u>." *Id.*[6]

---

[6]The plaintiff makes no mention at all of these "seniority" type issues in her EEOC charge or in her amended complaint (Doc. No. 4), although she asserts in her first complaint and in her deposition that her objection to the seniority system constitutes the basis for her claims. Furthermore, the plaintiff does not address

It is undisputed that although the plaintiff's department is almost all female and employs the unit seniority rule rather than the departmental seniority rule, the tactical unit, which is mostly male, follows the same rule of seniority for shift preference based on time spent in the unit without regard to time spent in the department as a whole. Ms. Gardner has put forth absolutely no evidence to show that the reason for a different seniority rule in her department is gender based or even that the rule has a disparate impact on females. There is simply no discriminatory purpose or practice alleged. Even the plaintiff testified in her deposition that the unit seniority rule is not based on race, sex, or gender. Doc. No. 32 at 85.

Title VII states that "it shall not be an unlawful employment practice for an employer to apply . . . different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system . . . ." 42 U.S.C. § 2000e-2(h). Bob Higgins, the data entry supervisor, indicated in a memo to Deputy Chief Fisher dated December 29, 1997, that the unit seniority system was favored for their department because it was difficult to attract civilian employees to work in a job requiring weekend and night hours, especially when

---

the defendant's argument in her response, instead arguing that her gender discrimination claim is based on sexual harassment by Mr. Shufford, and that she was moved into the data entry unit for filing a police report regarding Mr. Shufford's alleged assault on the plaintiff. The plaintiff also alleges in her response a claim of "hostile work environment," resulting from the filing of her police report against Mr. Shufford. The court notes that the plaintiff made no mention at all of an alleged assault by a co-worker or any type of sexual harassment or retaliation resulting from such an incident in her EEOC charge. In her first complaint, the plaintiff states that the discrimination of which she complains includes "[c]reating a hostile work environment. . . . During my tenure at the Birmingham Police Department I was assaulted on duty. I was forced to work in a job in which my seniority was reduced or taken away. . . ." Doc. No. 1. She later states in response to why she disagrees with the EEOC's conclusion that "[i]t is discrimination that begin [sic] after I reported being assaulted in the office by a male employee and continued until I was terminated." *Id.* Finally, in her amended complaint, the plaintiff discusses her Title VII claim only in the context of filing a grievance opposing the unit seniority system. There is no mention of an assault, sexual harassment, or filing of a police report. The court finds that the plaintiff is precluded from asserting new claims at this juncture in her response to the defendant's motion for summary judgment.

people transferring into the unit could bring seniority earned outside the unit to shift preference. Doc. No. 31 at exhibit 6. The plaintiff does not dispute Mr. Higgins' reasons for unit seniority or the defendant's reasons for instituting unit seniority in the data entry unit. The court finds that this record is devoid of any evidence showing that the unit seniority system is discriminatory in nature. Accordingly, the defendant's motion for summary judgment on this claim shall be granted.

### 2. Retaliation.

The plaintiff states in her deposition that she thinks she was terminated "basically because I filed a grievance complaining of a business practice of unit seniority in which 15 females and zero males were asked to practice or use unit seniority against rules and regulations and unit directives, in violation of Section 704(a) of Title VII of the Civil Rights Act of 1968, as amended." Doc. No. 32 at 112.

In order to make out a prima facie case of retaliatory discharge, the plaintiff must show that (1) she was engaged in statutorily protected expression, (2) her employer took an adverse employment action against her, and (3) a causal link exists between the protected expression and the adverse action. *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997). Title VII protects employees from discrimination by employers when the employee has opposed any practice *made unlawful by Title VII.*[7] 42 U.S.C. § 2000e-3(a).

_____

[7]The relevant portion of the statute states as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or

It has already been established that the unit seniority system, which the plaintiff opposes, is not a practice made unlawful by Title VII, and therefore, filing a grievance against it is not statutorily protected expression. In fact, the plaintiff testified in her deposition that she did not believe that unit seniority was based on race, sex, or gender. Doc. No. 32 at 85. The court agrees with the defendant's statement that "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII," citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) in support. As the plaintiff cannot establish the first prong of her prima facie case, her retaliation claim must fail.[8] Accordingly, the defendant's motion for summary judgment on this claim shall be granted.

## B. ADA.

In order to establish a prima facie case of disability discrimination under the ADA, the plaintiff must present evidence sufficient to justify a jury in finding: (1) that she has a disability; (2) that, with or without reasonable accommodations, she can perform the essential functions of the position she holds; and (3) that she was discriminated against because of her disability. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998). The court

---

other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

[8] Likewise, the plaintiff cannot satisfy the third prong of her prima facie case establishing a causal link because no protected activity exists.

9

finds that as to the third element, the plaintiff was not subjected to disability discrimination by the defendant. It is undisputed that after the plaintiff came back to work from having surgery on one of her fingers, the defendant asked the plaintiff for documentation indicating that she was able to return to work. Although the defendant told her that the documentation she presented was not sufficient, Doc. No. 32 at 96-97, she was allowed to come back to work on August 3, 1998, after presenting suitable documentation. *Id.* at 97-98. Accordingly, the court finds that the plaintiff was not discriminated against because of her disability.

The court also notes that the plaintiff indicates in her response to the motion for summary judgment that approximately a year after being diagnosed with "boutonniere deformities" in her finger, she was moved to the data entry position which allegedly required much more typing than her previous position.[9] The court finds that the plaintiff cannot establish the second element of her prima facie case in this instance because she makes absolutely no allegation that the defendant was aware of her condition or that she asked for some sort of accommodation to relieve the stress on her finger due to excessive typing. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (stating that "the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable").

---

[9] It is noteworthy that the plaintiff states in her response that "I advised Captain Gamble that Captain Todd had placed me in Data Entry because of disciplinary reasons." Doc. No. 34. She does not allege that her transfer to data entry was motivated by her alleged disability.

10

There is no evidence that the plaintiff ever even mentioned to her employer that she had a condition that required some type of accommodation.

Plaintiff's burden is to produce evidence that a specific, reasonable accommodation that would have enabled her to perform her job was available at the time of the employer's alleged adverse action and that this accommodation was identified to the employer.[10] Because the plaintiff has failed to meet her burden, the plaintiff's ADA claim fails in this alternative respect, notwithstanding the Court's ultimate conclusion that the plaintiff was not subjected to disability discrimination by the defendant. Accordingly, the defendant's motion for summary judgment is due to be granted in its entirety.

A separate order consistent with this opinion will be entered contemporaneously herewith.

Done, this __26th__ of April, 2000.


EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[10] As one court in this district has explained:

Plaintiff maintains that defendant's failure to initiate colloquy in order to identify reasonable accommodations operates as a per se preclusion to summary judgment. Plaintiff's argument is misplaced. *The burden is on the employee to inform the employer that an accommodation is needed and to request a specific accommodation.*

*Cheatwood v. Roanoke Indus.*, 891 F. Supp. 1528, 1538 (N.D. Ala. 1995) (Hancock, J.) (emphasis added).